FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 DEC 11 PM 3:53

U.S. DISTRICT COURT
N.D. OF ALABAMA

LEON FORMBY, }
}
    Plaintiff, }
}
    vs. }  CIVIL ACTION NO.
}
}  CV-96-AR-2444-S
BRASFIELD & GORRIE GENERAL }
CONTRACTOR, INC., ET AL., }
}
    Defendants.

ENTERED

DEC 11 1997

## MEMORANDUM OPINION

Plaintiff, Leon Formby ("Formby"), a former employee of Brasfield & Gorrie General Contractor, Inc. ("B&G"), alleges that defendants subjected him to hostile environment racial harassment and racial discrimination with respect to "promotions, pay, and other terms and conditions of employment." (Cmplt. at ¶¶ 7, 9 and 12). Formby claims that, in so doing, defendants violated the Civil Rights Act of 1964, *amended by*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). Formby also claims that defendants are guilty of negligent retention under Alabama law. Finding no genuine issue of material fact regarding Formby's claims for hostile environment racial harassment and negligent retention, the court concludes that defendants are entitled to judgment as a matter of law on those claims.

25

## I. *Pertinent Undisputed Facts*

Defendants operate a large construction enterprise. (Lankford Aff. at ¶ 4). Formby, a black male, began working as a general laborer for defendants in or around April, 1995. (Formby Depo. at 32). Initially, Formby was assigned to work at a site located near the Riverchase Galleria shopping mall in Hoover, Alabama. (Pl. Brf. at 1). In September, 1995, defendants transferred Formby to their warehouse facility (the "warehouse") located on Mary Taylor Road in Birmingham, Alabama. (Id. at 42-43, 49). Todd Lankford ("Lankford"), a white male, became the superintendent of the warehouse in October, 1995.

As a general laborer at the warehouse, Formby mainly worked outside in "the yard" and performed such tasks as sandblasting, painting, grinding, loading and stacking materials. (Id. at 51-53). During the time in which Formby was assigned to the yard, his immediate supervisor was Fred Roth ("Roth"), the yard foreman. (Id. at 55). Soon after Formby began working with Roth, their working relationship started to deteriorate. According to Formby, Roth regularly used profane or obscene language when speaking with him. Formby found this practice distasteful, and he complained about it to Lankford. (Id. at 62-63, 178-79).

Apparently, the tension between Formby and Roth continued to

2

increase. Eventually, the tension culminated in a incident in which Formby alleges that Roth yelled at him for sitting on a bucket while grinding paint off a metal tank. (Id. at 95-96). Following this incident, Formby decided that he "wasn't going to take it anymore." (Id. at 96). He told Roth "you ain't going to talk to me this way because I'm about this far from breaking my foot off in your butt." (Id.). Immediately after this exchange, Formby and Roth brought their disagreement to Lankford. (Id. at 113, 115-17). At this time, Formby lodged his second complaint about Roth, and he expressed the opinion that Roth's conduct "could be . . . racial harassment." (Id. at 115).

Within weeks of Formby's second complaint, Lankford reassigned him to operate the pressure washer, which is located away from the yard in another area of the warehouse. (Id. at 119). As a result of this reassignment, Formby and Roth were physically separated, and Formby no longer worked under Roth's supervision. (Id. at 118). According to Formby, Lankford's decision to reassign him to the pressure washer position "made a difference" and "stopped a lot of things." (Id. at 118, 120). However, he says that Roth continued to harass him despite the move. (Id. at 118, 120-22).

On September 17, 1996, Formby filed the instant lawsuit. Nevertheless, he continued working for defendants. In March,

3

1997, Formby informed defendants that he would be away from work for an indefinite period in order to attend to a family emergency in California. (Pl. Brf. at 4; Lankford Aff. at ¶ 10). Several weeks later, Formby returned to work and the pressure washer position.[1] Formby voluntarily resigned his position with defendants on or about August 7, 1997. (Id. at 34).

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Eleventh Circuit also has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Defendants have invoked Rule 56.

---

[1] Formby testified that he was away in California for two weeks. (Formby Depo. at 221). Lankford testified that Formby was absent for six weeks. (Lankford Aff. at ¶ 10).

### III. *Discussion*

#### A. Formby's Disparate Treatment Claim.

In his complaint, Formby alleges that defendants subjected him to disparate treatment with respect "promotions, pay, and other terms and conditions of employment" because of his race. (Cmplt. at ¶ 12). Neither defendants' motion for summary judgment not their brief in support of said motion addresses this allegation. Given this fact, and the fact that Formby's deposition testimony creates a genuine issue of material fact on this claim (Formby Depo. at 65-66), the court concludes that summary judgment is not appropriate on Formby's disparate treatment claim.

#### B. Formby's Hostile Environment Claim.

Formby bases his hostile environment racial harassment claim on certain discrete incidents.[2] As noted above, Formby principally complains that Roth often used profane language when speaking to him. (Pl. Brf. at 2). He also says that Roth once remarked to others more than once that Abraham Lincoln's

---

[2] In his deposition, affidavit, and brief opposing defendants' motion for summary judgment, Formby describes harassment that he claims he experienced prior to being transferred to the warehouse. (Formby Depo. at 46-47; Pl. Aff. at 1-2; Pl. Brf. at 1-2). However, when asked if he intended to pursue these incidents as a part of the instant action, Formby replied that "this lawsuit here refers to only the events that took place while I worked [at the warehouse]." (Formby Depo. at 49). Accordingly, the court will consider only those events which Formby claims occurred at the warehouse in evaluating his claim for hostile environment racial harassment.

5

assassination should have occurred sooner. (Formby Depo. at 106-07). In addition, Formby claims that Roth referred to him and other black employees as "boys" on more than one occasion. (Id. at 66). Likewise, according to Formby, Roth and Bell Wales both used the phrase "eeny meeny miny moe" in his presence. (Id. at 120). In still another incident, Formby says that Roth brought a hunting rifle to work and demonstrated his hunting technique to other employees. (Id. at 160-61). Formby also says that Roth once berated him for being late to work. (Id. at 100-01). Formby also describes an incident in which an unidentified employee said to him, "I'll kill you. KKK." (Pl. Aff. at 9). Lastly, he alleges that Marvin Yates ("Yates") once told him a story about a man from Cullman, Alabama, whom local residents call "Nigger Charlie." (Id. at 238-39).³

---

³ Formby testified in an affidavit subsequent to his deposition. Defendants contend that Formby's affidavit testimony describes several allegedly racial incidents that he did not mention at his deposition. They ask the court to disregard Formby's affidavit testimony concerning these additional incidents as an attempt to improperly modify his deposition testimony. Defendants' concern are justified. At his deposition, Formby was asked to describe any incident at the warehouse that he perceived as racial harassment. (Formby Depo. at 111). If the additional incidents Formby describes in his affidavit occurred, then he should have described them at his deposition when defendants asked him to do so. Despite the fact that the record contains only excerpts from Formby's deposition, the court is satisfied that he did not testify about these additional incidents at his deposition. The court's willingness to reach this conclusion stems, in large part, from the fact that Formby's brief relies almost exclusively on his affidavit for evidentiary support. Moreover, Formby offers no explanation for the apparent discrepancy in his testimony. Consequently, insofar as Formby's affidavit testimony describes incidents not discussed in the body of this opinion, the court will disregard such testimony as a sham. Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 656 (11th Cir. 1984) (holding that district courts have discretion to find an affidavit that contradicts

6

According to the Eleventh Circuit:

> "Hostile environment [racial] harassment occurs when a employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" (Citation omitted). Title VII [and § 1981 are] violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (Citation omitted). *The harassing conduct must create both an objectively hostile or abusive environment* — one "that a reasonable person would find hostile or abusive" — *and a subjectively hostile or abusive environment* — one that "the victim subjectively perceive[s] . . . to be abusive."

Fleming v. Boeing Co., 120 F.3d 242, 245 (11th Cir. 1997) (emphasis supplied).[4] Formby contends that defendants are both directly and indirectly liable for the harassment he attributes to Roth and others. (Pl. Brf. at 6). Direct liability for hostile environment racial harassment occurs only when the employer knew, or, upon reasonably diligent inquiry, should have known of the alleged harassment and failed to take prompt remedial action. *See* Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1552 (11th Cir. 1997) (articulating standard for direct liability). "The employee can show that the employer knew

---

deposition testimony a sham in absence of explanation for contradiction).

[4] Although Fleming discusses the standard for hostile environment claims only within the context of Title VII, the same standard applies with respect to hostile environment claims brought pursuant to § 1981. *See* Whiting v. Jackson State Univ., 616 F.2d 116, 121 (5th Cir. 1980) (explaining that, when § 1981 and Title VII are used as basis for parallel relief, legal elements for such claims are identical).

7

of or should have known of harassment by proving either that he complained to higher management of the problem or that the harassment was so pervasive as to infer constructive knowledge on the part of higher management." Reynolds v. CSX Transp., Inc., 115 F.3d 860, 866-67 (11th Cir. 1997). An employer incurs vicarious liability for hostile environment racial harassment: (1) when the harassing employee was acting within the scope of his employment at the time of the harassment; or, (2) when the harassing employee was acting outside the scope of his employment but was assisted in the harassment by the existence of his agency relationship with the employer. Farley, 115 F.3d at 1552. When the foregoing principles are applied to the facts of this case, summary judgment on Formby's hostile environment claim is appropriate for several reasons.

First, Formby admits in his deposition that he did not perceive the use of the term "boys" or Yates's story about "Nigger Charlie" to be racially motivated. (Formby Depo. at 81-85; 238-40). In fact, Formby testified that, given his own age, "I think that I am a boy under a man [Roth's age]." (Id. at 81). Absent his subjective perception that these incidents occurred as a result of racial animus, these incidents are not actionable as racial harassment under Title VII or § 1981. Fleming, 120 F.3d at 245.

8

Second, as a general rule, the use of profanity in the workplace is not actionable under Title VII or § 1981. *Cf.* Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1010 (7th Cir. 1994) (explaining that "while there are still people in this country, male as well as female, who are deeply offended by dirty words, employers are not under a duty enforceable by suits under Title VII [or § 1981] to purify the language of the workplace"). Consequently, Formby may not rely on Roth's use of profanity to advance his hostile environment claim. Although this limitation might not apply if Roth used such language only when speaking with Formby or other black employees, such was not the case here. In fact, Formby admits that Roth used profanity in the presence of Lankford and other white employees, and he testified that Roth had a "very bad reputation" for such ill-mannered conduct. (Pl. Brf. at 3; Formby Depo. at 63, 107).

Third, although the incident involving the unidentified employee who mentioned the "KKK" to Formby demonstrates obvious racial animus, Formby cannot show that defendants are either directly or indirectly liable for this incident. Nothing in the record indicates that Formby ever complained to higher management about this incident before the filing of this lawsuit. Similarly, it was one, isolated incident and, therefore, cannot

9

be said to be "pervasive" such that it would confer constructive knowledge of the harassment on Formby's employer. Absent some showing that defendants had either actual or constructive knowledge of this incident, it is not actionable under Title VII or § 1981. Farley, 115 F.3d at 1553-54. Furthermore, with respect to any indirect liability defendants may have for this incident, Formby has failed to make any showing that would create a jury issue.

Fourth, with respect to the remaining incidents, Formby offers nothing other than his own subjective opinion that the incidents were racially motivated. For example, although Formby perceived Roth's demonstration with the hunting rifle to mean "I've got this gun and I will shoot you," he makes no showing that Roth took any action which communicated that sentiment explicitly. (Formby Depo. at 161-64). Likewise, although Formby perceived the use of the phrase "eeny meeny miny moe" as a racial slur, the record reveals that this phrase need not necessarily convey racial animus. (Id. at 122). Without some greater showing that Roth or Bell Wales intended this phrase as a racial slur, Formby's personal dislike for the phrase alone does not create a jury issue. The fact that Formby admits that he never heard Roth use the word "nigger" in his presence goes to support this conclusion. (Id. at 111). Again, as Fleming makes clear,

10

in order for allegedly harassing conduct to be actionable, it must be "hostile and abusive" from both an objective and a subjective perspective. Fleming, 120 F.3d at 245. Thus, given Formby's failure to present evidence that would prompt a reasonable person to conclude that the remaining incidents were racially hostile or abusive, the court concludes that the remaining incidents cannot form an evidentiary basis from which a fair-minded jury could find that they constitute racial harassment.

### C. Formby's Negligent Retention Claim.

Formby claims that, by failing to discipline, discharge, or take remedial action after he reported Roth's allegedly harassing conduct to Lankford, defendants are guilty of negligent retention under Alabama law. Defendants argue that Formby's claim for negligent retention fails because they reassigned Formby following his complaints, and they were unaware of any further harassment by Roth after taking this remedial action. Defendants' argument is well taken.

According to the Supreme Court of Alabama, an employer "must use due care to avoid the . . . retention of an employee whom [the employer] knows or should know is a person unworthy, by habits, temperament, or nature, to deal with persons invited to the premises by the employer." Brown v. Vanity Fair Mills, Inc.,

11

277 So.2d 893, 895 (Ala. 1973). The employer's duty to do so extends to its employees and other invitees alike. *See* Lawson v. Williams, 514 So.2d 882, 883 (Ala. 1987) (characterizing employees as invitees of their employer). In the instant case, the record reveals that Formby complained about Roth's behavior to Lankford on two occasions.[5] (Formby Depo. at 178). According to Formby, his first complaint came before the tension with Roth "had escalated." (Id. at 179). Within a few weeks of Formby's second complaint about Roth, Lankford reassigned Formby to the pressure washer position in an apparent effort to separate the two employees. (Id. at 118-19, 180). In so doing, Lankford also removed Formby from Roth's supervision. (Id.). Although Formby states in his deposition that problems with Roth continued after Lankford moved him to the pressure washer position, he points to no credible evidence which supports his contention that defendants were aware of any subsequent problems before he filed this lawsuit. (Formby Depo. at 118-19). In the absence of such evidence, the court concludes that defendants did not breach

---

[5] Formby testifies in his deposition that he complained to Lankford on two occasions. (Formby Depo. at 178). However, in his subsequent affidavit, he testifies that he complained to Lankford on more than two occasions. (Pl. Brf. at 9). Formby offers no explanation for this contradiction. Therefore, the court will disregard Formby's affidavit testimony regarding the number of times he spoke with Lankford as a sham. Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 656 (11th Cir. 1984) (holding that district courts have discretion to find an affidavit that contradicts deposition testimony a sham in absence of explanation for contradiction).

12

their duty of care to Formby. Cf. <u>Patterson v. Augat Wiring Systems, Inc.</u>, 944 F. Supp. 1509, 1529 (M.D.Ala. 1994) (denying judgment on pleadings for employer where employer failed to take remedial action after plaintiff's complaints about coworker proved legitimate).

Formby's negligent retention claim fails for another reason. There is no cause of action under Alabama law for hurt feelings. Formby fails to offer admissible evidence of any damages or injury of a kind actionable under Alabama's theory of negligent retention of a supervisor or coworker.[6] Accordingly, defendants are entitled to summary judgment on his negligent retention claim.

---

[6] In support of his brief opposing defendants' motion for summary judgment, Formby offers two reports from a doctor and an audio tape. Although these reports and tape suggest that Formby suffered headaches, "butt aches," insomnia, and other adverse physical consequences as a result of the stress caused by the alleged harassment, the court cannot consider these reports or the tape. The record reveals that Formby failed to produce these reports and the tape as a part of his Fed.R.Civ.P. 26 disclosures, in response to defendants' request for documents, or when asked to do so at his deposition. (Formby Depo. at 164-75). Hearsay concerns aside, it would manifestly unfair to allow him to rely on these reports and the tape now.

## IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this 11th day of December, 1997.

                                              _____
                                              WILLIAM M. ACKER, JR.
                                              UNITED STATES DISTRICT JUDGE